(137 So. 659)

## MacDONALD v. RAILWAY FUEL CO.

6 Div. 969.

Supreme Court of Alabama.

Nov. 19, 1931.

J. B. Powell, of Jasper, for appellant.

Bankhead & Bankhead, of Jasper, for appellee.

616

BOULDIN, J.

The bill, held subject to demurrer by the decree under review, discloses that complainant, Daniel MacDonald, had been superintendent of the coal-mining operations of defendant, Railway Fuel Company, a subsidiary of Southern Railway Company, for some ten years, when, on June 11, 1929, the transactions here complained of were had.

The mining operations produced some 2,-800 tons of coal per day. Complainant was responsible for the expenditure of large sums of money for labor supplies, etc., in the operation of the mines. On June 11, 1929, complainant was called to the office of defendant company and confronted with a charge of having illegally used and spent a large amount of money of defendant; and, on demand of the general auditor of the Southern Railway System, and on the advice of his immediate superior, complainant turned over all his property, real and personal, with the understanding that an investigation and audit would be made and an adjustment and settlement be had.

The transaction was evidenced by a receipt reading:

"Receipt of the documents (Bonds and stocks, etc.) hereon listed and currency of $1,150.00 is acknowledged, the documents and money being payment by Dan MacDonald to apply on his indebtedness as may hereafter be determined, to the Railway Fuel Company.

"T. H. Seay,
"General Auditor Southern Ry. System."

Stocks and bonds were listed of face value of $14,200.

A second receipt represented a check and account in Guaranty Savings Building & Loan Association of apparent cash value of $1,-103.86, as to which it was stipulated: "To the extent of their money value the amounts are received as payments by Dan MacDonald to apply on his indebtedness to the Railway Fuel Company, as may hereafter be determined."

At the same time and for like purpose a deed to complainant's real estate was executed to defendant company on a recited consideration of "($10.00) and other valuable considerations."

The bill, filed November 28, 1930, charges: "Complainant further alleges that there has been no audit of his books by any officer or agent of the Railway Fuel Company or by any one else, or that if there has been such audit of his said books in connection with his operations of said coal mines as superintendent of the said Railway Fuel Company, as aforesaid, that there was found to be no shortage of any moneys of the said Railway Fuel Company, which books or audits would show, if properly made."

It is then alleged that the complainant has demanded the return of his personalty and a reconveyance of the realty, which demand was refused.

The bill proceeds: "Complainant further reports and further shows unto your Honors that if he is indebted to the said Railway Fuel Company he is ready, able, and willing to pay such indebtedness whenever the same is properly ascertained. Complainant now offers to pay any and all indebtedness which it is due or may be due to the said Railway Fuel Company, a corporation, growing out of any transaction while he was superintendent and in charge of its coal mines in Walker County, Alabama. Complainant offers to do equity."

The bill prays that defendant be required by decree to return the cash and personalty, accounting for interest and profits and to reconvey the lands, etc. There is a prayer for general relief.

■ We construe the above-quoted averments of the bill to charge that complainant was not indebted to respondent, that a proper audit would show the true status, and that there was no shortage.

Grounds of demurrer challenging the equity of the bill on the assumption that there is no denial of the indebtedness are not well taken.

■ Nor do we construe the bill as seeking a rescission and cancellation on the ground of duress, regardless of the status of the indebtedness growing out of misappropriation of defendant's funds or otherwise in the course of complainant's superintendence of mining operations.

True, there are several averments tending to show complainant was told at the time that he could be sent to the penitentiary for his doings, and other circumstances tending to coerce him into making an immediate turnover on terms not very definitely stated in the writings.

But he expressly offers to do equity, and to pay any indebtedness which may be ascertained.

Taking the bill as a whole, it does not appear complainant is to be denied relief because he comes into equity with unclean hands.

If he was not and is not indebted as claimed at the time, no implied threat of prosecution as an inducement to the transaction can put him in the position of compounding a felony, but emphasizes his equity to be relieved from any transaction induced by such threats.

If he was indebted, such implied threats cannot be invoked by respondent to escape the equities inherent in the transaction. The documents, so far as they go, support the view of complainant that the properties were taken in trust, to be applied to the indebtedness if, when, and as ascertained.

The transaction does not purport to authorize respondent to take the property absolutely regardless of the amount of indebtedness, if any there was.

The bill denies any foundation for a criminal charge, avers no agreement to suppress a prosecution as a consideration in whole or in part for the property transferred.

While the bill may not set forth as aptly as might be in technical terms the equity asserted in its alternative allegations, still the facts averred and the prayer clearly enough disclose the relief sought, and the bases therefor.

There was error in sustaining the demurrer.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.